CAROLYN KEEGAN
*vs.*
GREEN GIANT COMPANY

\* \* \* \* \* \* \*

WILLIAM KEEGAN
*vs.*
GREEN GIANT COMPANY

Penobscot.   Opinion, November 12, 1954.

*Edward Stern,* for plaintiffs.

*James E. Mitchell,*
*John W. Ballou,* for defendant.

SITTING:  FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, TAPLEY, JJ. BELIVEAU, J, did not sit. WILLIAMSON, J. dissents.

TAPLEY, J.   On exceptions.   Action is brought by plaintiff, Carolyn Keegan, against defendant, Green Giant Com-

pany, for damages alleging that the defendant negligently prepared, manufactured, packed and distributed a can of peas which contained a sharp piece of metal concealed in the peas and that the plaintiff while eating them swallowed the piece of metal, it lodging in her throat. Plaintiff, William Keegan, husband of Carolyn Keegan, seeks recovery for expenses of his wife and loss of consortium. The cases were tried before a jury at the November Term, A. D. 1953 of the Superior Court in the County of Penobscot and State of Maine.

At the close of the plaintiffs' cases, the defendant rested without submission of evidence and requested the court to direct a verdict for the defendant in both cases.

The plaintiffs excepted to the refusal of the presiding justice to admit certain evidence in the nature of a proposed exhibit in the form of a tin can encircled with a label, and also to the direction of the verdicts in favor of the defendant.

The record discloses that on the fourth day of February, 1953, Carolyn Keegan was living in Jonesport, Maine and working at D. O. Hall's Grocery Store and that the store purchased Green Giant Company canned peas from T. R. Savage & Company of Bangor, a distributor.

Mrs. Nettie R. Alley, mother of Carolyn, purchased a can of peas from the store in which her daughter was employed on the day that the peas from this can were served to her daughter in Mrs. Alley's home. Mrs. Alley opened the can, poured the peas into a pan, warmed them and later served a portion to her daughter Carolyn at the evening meal. Carolyn in eating the peas, along with other food, suddenly experienced a choking sensation and then dislodged a triangular piece of steel identified as "Plaintiff's Exhibit 3."

The exceptions in these cases concerning the direction of verdicts for the defendant will be determined by the

disposition of those exceptions pertaining to the refusal of the presiding justice to admit the can with the label thereon and marked "Plaintiff's Exhibit 1" (for identification).

The can is described as the usual sized tin can ordinarily used to contain green peas. It has imprinted on the bottom portion the following:

"A C f C 5"

and directly underneath these letters and number is:

"3 L Y"

The can is encircled by a label. The pertinent and important material printed thereon are the words:

"GREEN
GIANT
Brand
    Great Big
    Tender
SWEET PEAS.
Distributed by
GREEN GIANT
    COMPANY
Le Suer, Minn.

C GG Co. Reg. U. S. Pat. Off.    Packed in U. S. A.
Replacement or refund of money

*

Guaranteed by
Good Housekeeping
If not as advertised therein."

There is other printed matter on the label which is not material or germane to the issue.

The plaintiffs contend that "Plaintiff's Exhibit 1" (marked for identification), being the can with label there-

on, should have been admitted as evidence for the purpose of showing that the Green Giant Company was the distributor of this can of peas and for the further purpose that the can of peas by reasonable inference was packed by the defendant, Green Giant Company, and that the jury should have had an opportunity of determining if these were the facts. The defendant contends that Plaintiff's Exhibit 1 (marked for identification) should not have been admitted without extrinsic evidence connecting the defendant with the case other than through the medium of the label on the can.

Exceptions to the refusal of the presiding justice to admit Plaintiff's Exhibit 1 are stated in the record as follows:

"Mr. STERN: Your Honor, I would like to introduce Plaintiff's Exhibit Number One in evidence for the purpose of showing that it is self evident that the Green Giant Company was the distributor of this can of peas and also for the purpose of showing that if the jury did find that the Green Giant Company was the distributor that the jury could reasonably infer that this can of peas was also packed by the Green Giant Company.

The COURT: I will exclude it and you may have an exception."

Plaintiff's mother, Nettie R. Alley, testified that she purchased the can of peas from D. O. Hall's Grocery Store in Jonesport on the morning of the day she served them to her daughter and that Plaintiff's Exhibit 1 is the same can which contained the peas that she purchased.

The question here to be determined is whether or not Plaintiff's Exhibit 1 (marked for identification) is admissible in and of itself as evidence to prove that the defendant manufactured, packed and distributed the peas.

The plaintiffs in their brief cite a number of cases which they argue sustain their contention that this label is suf-

ficient by itself to establish that the company whose name and other information appears upon the label is the manufacturer and packer of the contents of the can upon which it is placed. A careful analysis of the cases cited shows that in addition to the printed matter on the label, there was other evidence in connection therewith which identified the defendants with being the manufacturer, packer or distributor of the product.

There are no decisions precisely determining the question of admissibility of an exhibit under circumstances similar to those in this case. This fact requires reference to the substantive law for an answer to the problem. We are here concerned with the authorship of the printed matter on the label and are asked to approve its admissibility without proof of authorship. The admission of such material under these circumstances would violate the cardinal principle of proof of a written or printed document.

*Wigmore on Evidence, Vol. VII, Sec. 2150:*

> "Printed matter in general bears upon itself no marks of authorship other than contents. But there is ordinarily no necessity for resting upon such evidence, since the responsibility for printed matter, under the substantive law, usually arises from the act of causing publication, and merely of writing, and hence there is usually available as much evidence of the act of printing or handing to a printer as there would be of any other act, such as chopping a tree or building a fence.
>
> There is therefore no judicial sanction for considering the contents alone as sufficient evidence."

*Sec. 2130:*

> "********* The general principle has been enforced that a writing purporting to be of a certain authorship cannot go to the jury as possibly genuine, merely on the strength of this purport;

there must be some evidence of the genuineness (or execution) of it."

See 131 A. L. R., Page 301.

This case is devoid of any evidence connecting the defendant as the author of the printed material on the label and, further, that it was the packer, manufacturer or distributor of the contents of the can encircled by the label.

The can itself bore certain distinguishing letters and figures which might be code numbers identifying the packer but here again there is no extrinsic evidence bearing on the fact.

The presiding justice below committed no error in excluding the exhibit.

*Exceptions, in each case, overruled to the exclusion of evidence.*

*Exceptions, in each case, overruled to the direction of verdicts for the defendant.*

### DISSENTING OPINION

WILLIAMSON, J. I would sustain the exceptions. The position of the Green Giant Company as I understand it is this: A can of peas with certain letters and numbers imprinted on the bottom portion and encircled with a label bearing the defendant's registered trademark and its name as the distributor, and in no way distinguishable to the purchaser or consumer from the defendant's product, is not evidence in itself sufficient to prove that the particular can was distributed by the defendant.

Day in and day out every one of us accepts the label on canned food products as sufficient proof of the brand and the producer or distributor. How else can we identify as a

practical matter types and brands of canned food products? We are urged by every method of publicity to purchase "brand" products by the label. Further, it is common knowledge that the misuse of a trademark and the misbranding of food products are serious offenses under Federal laws designed to protect all concerned from producer to consumer.

There is of course the possibility of substitution or imitation. This risk must be small indeed in a business which has gained the confidence of the consuming public through the use of distinctive labels.

Surely we may assume that the defendant does in fact distribute a product of the type described in the label. If this were not so, it could readily have disposed of the case. There is no suggestion by the defendant that such is not the fact. There are imprinted on the bottom portion of the can certain letters and numbers, e.g., "A C f C 5" "3 L Y." They have no meaning to the purchaser. A distributor can readily tell us whether they identify its own product.

Apart from the question of proof of the fact of distribution, there is no objection by the defendant to the sufficiency of the evidence on the other issues in the case. In my opinion the can and label should have been admitted in evidence and the case submitted to the jury.