CHERYL SMITH *vs.* ARIENS COMPANY.

Bristol. October 5, 1977. — July 6, 1978.

PRESENT: QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Evidence*, Identity of manufacturer. *Negligence*, Manufacturer, Snow-
mobile. *Practice, Civil*, Directed verdict.

In an action to recover damages for injuries sustained by the plaintiff
  while she was operating a snowmobile, evidence that a decal on the
  snowmobile had the defendant's name on it was sufficient to identify
  the defendant as the manufacturer of the snowmobile. [621-623]
A manufacturer of snowmobiles owed a duty to users of its snowmobiles
  to design them so as to avoid unreasonable risks of injury following a
  collision. [623-625]
In an action to recover damages for injuries sustained by the plaintiff
  while she was operating a snowmobile which hit a rock causing her
  face to hit a brake bracket with two sharp metal protrusions, evidence,
  including the existence and placement of the protrusions and the
  absence of guards to cover them, was sufficient to allow the jury to
  determine whether the snowmobile was negligently designed even
  though the plaintiff presented no expert testimony. [625]
In a products liability case based on a theory of negligent design, the
  plaintiff was not required to negate the possibility of mishandling by
  intermediaries. [625-627]

TORT. Writ in the Superior Court dated February 23,
1972.

The action was tried before *Rutledge*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Jeffrey S. Entin* for the plaintiff.

*Francis P. McDermott* for the defendant.

ABRAMS, J. The plaintiff Cheryl Smith (Smith) seeks to
recover damages from the defendant manufacturer Ariens

Company (Ariens)[1] for injuries sustained by her while she was operating an Ariens snowmobile.

On March 1, 1970, Smith, after receiving instructions concerning the operation of the snowmobile, operated it in a field. The snowmobile hit a rock which was partially covered by snow. On impact, the right side of Smith's face came down and hit a brake bracket on the left side of the snowmobile. The brake bracket had two sharp metal protrusions on the inside which were toward the plaintiff's face. As a result of the injuries she sustained, Smith required hospitalization and surgery.

The case was tried before a jury in the Superior Court. At the close of the plaintiff's case, the defendant moved for a directed verdict. The judge granted this motion and entered judgment for the defendant Ariens. The Appeals Court affirmed the judgment. 5 Mass. App. Ct. 791 (1977). We granted further appellate review. We reverse and order a new trial.

1. *Identification of manufacturer.* The defendant first argues that since the only evidence introduced at trial tending to show that the defendant was the manufacturer was the presence on the snowmobile of a decal which read "Ariens," there was insufficient evidence to identify the defendant as the manufacturer of the snowmobile. Even assuming that the name "Ariens" on the decal was the only evidence on this issue,[2] we disagree that insufficient evidence was introduced to identify the defendant as the manufacturer.

In *Doyle* v. *Continental Baking Co.*, 262 Mass. 516 (1928), we concluded that a label on which the defendant's name appeared was sufficient to identify the defendant as the manufacturer of the product. Since the name was regis-

---

[1] The retailer Burns Inc. was also initially named as a defendant. However, the counts against it were dismissed before trial.

[2] Other evidence from which the jury could infer that Ariens was the manufacturer of the snowmobile was introduced at the trial. For example, a witness familiar with various brands of snowmobiles testified that the snowmobile on which the plaintiff was injured was an Ariens.

tered as a trademark, under Federal law no one but the defendant had a right to use this name. General Laws c. 156B, § 11 (*a*), provides similar protection for the names or trade names of corporations established or carrying on business in this Commonwealth: no other corporation may assume that name or trade name. Thus, if a defendant's name is registered as a trademark or is a trade name, the appearance of that name on the product in question is sufficient to identify the defendant as the manufacturer. See *Nugent* v. *Popular Mkts., Inc.*, 353 Mass. 45 (1967). See also *Portland Me. Publishing Co.* v. *Eastern Tractors Co.*, 289 Mass. 13, 17-18 (1935); *Weiner* v. *D.A. Schulte, Inc.*, 275 Mass. 379, 383-384 (1931). To the extent that there is language to the contrary in *Jacobs* v. *Hertz Corp.*, 358 Mass. 541 (1970), *Shachoy* v. *Chevrolet Motor Co.*, 280 Mass. 442 (1932), and *Murphy* v. *Campbell Soup Co.*, 62 F.2d 564 (1st Cir. 1933), we decline to follow that language.

Several rationales underlie the acceptance of this rule. First, since trademarks and trade names are protected under statutes, the probability that a particular name will be used by another corporation is very low. See *Doyle* v. *Continental Baking Co.*, *supra* at 519. Second, since the probability is very high that the corporation whose name appears on a product is the corporation which manufactured the product, judicial efficiency will be served by allowing the identity of the name on a product and the defendant's name to satisfy the plaintiff's burden of identifying the defendant as the manufacturer. See *Flood* v. *Belfast & Moosehead Lake R.R.*, 157 Me. 317, 318-319 (1961). Finally, the presence of trademarks or trade names on products is accepted and relied on in daily life as sufficient proof of the manufacturer of the product. This common acceptance, which has been reinforced by manufacturers' advertising, indicates that the identity of a corporation's name and the name on a product should be sufficient to identify that corporation as the manufacturer. See *Keegan* v. *Green Giant Co.*, 150 Me. 283, 288-289 (1954) (Williamson, J., dissenting).

The presence of Ariens's name on the snowmobile is thus sufficient to identify it as the manufacturer of the snowmobile. Of course, the defendant may introduce evidence indicating that it is not the manufacturer of the particular product, see *Doyle* v. *Continental Baking Co.*, *supra* at 519, but the plaintiff's burden of presenting sufficient evidence to identify the defendant as the manuacturer is satisfied by a showing that the name on the product and the name of the defendant are the same.

2. *Design defect.* The theory on which the plaintiff's action was tried was that the snowmobile was negligently designed because the brake bracket had protrusions extending from it. The plaintiff claims that because the snowmobile was negligently designed, she sustained more severe injuries than she otherwise would have when she hit the rock in the field. The defendant argues that tort liability should not be imposed on manufacturers for design defects which merely enhance, rather than cause, injuries.

We have not yet decided whether such liability should be imposed, and there is a split of authority among the courts which have considered this issue. These courts have generally agreed that a manufacturer has the duty to design its product so that it is reasonably fit for the purpose for which it was made. See *Larsen* v. *General Motors Corp.*, 391 F.2d 495, 501 (8th Cir. 1968); *Evans* v. *General Motors Corp.*, 359 F.2d 822, 824 (7th Cir.), cert. denied, 385 U.S. 836 (1966). However, they differ over the concept of intended use. One line of cases, represented by the case of *Evans* v. *General Motors Corp.*, *supra*, concludes that the intended purpose of products does not include their participation in collisions with other objects and thus that a manufacturer is not liable for enhanced injuries due to defective design which occur as a result of such collisions.[3] The other line, represented by *Larsen* v. *General Motors Corp.*, *supra*,

---

[3] The *Evans* decision itself has recently been overruled. In the course of the opinion the court questioned the continued vitality of the *Evans* approach. See *Huff* v. *White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977).

finds that enhanced injuries from collisions are foreseeable as incidental to the normal use of certain products and imposes liability on manufacturers for these injuries.

Under our cases also, a manufacturer has the duty to design products so that they are reasonably fit for the purposes for which they are intended. See *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 782 (1975). See also Restatement (Second) of Torts § 398 (1965). In determining the scope of intended use, we are persuaded by the reasoning in *Larsen* that such use should include foreseeable participation in collisions and that manufacturers have a duty to design products so that users are not subjected to unreasonable risks of injury in the event of a collision. "Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. . . . No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury . . . all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable." *Larsen* v. *General Motors Corp.*, *supra* at 502. See *Huff* v. *White Motor Corp.*, 565 F.2d 104, 108-109 (1977); 1 L. Frumer & M. Friedman, Products Liability § 7.01 (3) (1977); 2 F. Harper & F. James, Torts, Comment to § 28.4, at 213-214 (Supp. 1968); Note, Liability for Negligent Automobile Design, 52 Iowa L. Rev. 953 (1967); Comment, Automobile Design Liability: *Larsen* v. *General Motors* and Its Aftermath, 118 U. Pa. L. Rev. 299 (1969).

The major argument against the imposition of liability for negligent design which results in enhanced injury is that the Legislature, rather than the judiciary, should determine design standards. See *Evans* v. *General Motors Corp*, *supra*

at 824. However, as noted in *Larsen*, "[t]he common law is not sterile or rigid and serves the best interests of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing needs of our time. The common law standard of a duty to use reasonable care in light of all the circumstances can at least serve the needs of our society until the legislature imposes higher standards." *Larsen* v. *General Motors Corp.*, *supra* at 506. See Comment, Automobile Design Liability, *supra* at 305-307.

In the present case, the plaintiff was injured when her head came down on protrusions from the brake bracket after a collision with a rock. It is foreseeable that snowmobiles, like automobiles, will be involved in collisions with other objects. Thus Ariens owed a duty to users of its snowmobiles to design them so as to avoid unreasonable risks of injury following a collision.

The defendant further argues, however, that even if it owed such a duty to users, the plaintiff did not present sufficient evidence to establish a breach of this duty because she did not introduce any expert testimony tending to show that the snowmobile was negligently designed. However, in cases in which a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury, expert testimony that a product is negligently designed is not required. *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 782 (1975). It is within the knowledge of a jury whether unshielded metal protrusions on the handle bar of a snowmobile constitute a defect in design which creates an unreasonable risk of harm.

The evidence presented to the jury, including the existence and placement of the protrusions and the absence of guards to cover them, was sufficient to allow the jury to determine whether the snowmobile was negligently designed. Cf. *Ford Motor Co.* v. *Zahn*, 265 F.2d 729 (8th Cir. 1959).

3. *Control of the defendant.* In support of the allowance of the motion for a directed verdict, the defendant finally argues that insufficient evidence was presented to show that

the brake bracket was not attached by intermediaries in the chain of distribution.

The plaintiff in a products liability action must, of course, show that the defect which caused the injury is attributable to the defendant's negligence. *Coyne* v. *John S. Tilley Co.*, 368 Mass. 230, 234 (1975). *Carney* v. *Bereault*, 348 Mass. 502, 506 (1965). Under a theory of negligent design, a total product line is claimed to be defective because of faulty design. See Restatement (Second) of Torts § 398 (1965). Thus, the essence of this theory is that all products of a particular type are defective when they leave the manufacturer. To show that a defect is attributable to a manufacturer in a design defect action, therefore, the plaintiff must show that the defect existed at the time the product left the manufacturer. *Mickle* v. *Blackmon*, 252 S.C. 202, 237 (1969). See Swartz & Swartz, Products Liability in Massachusetts, 60 Mass. L.Q. 169, 172-173 (1975). No negating of the possibility of mishandling by intermediaries is necessary. Cf. *Carter* v. *Yardley & Co.*, 319 Mass. 92, 99-100 (1946).

In support of its argument that the plaintiff must show that the product was not improperly handled by intermediaries, the defendant relies on cases in two other areas of products liability law which require plaintiffs to prove that the product was not mishandled after it left the defendant's control. Both these lines of cases, however, are distinguishable from negligent design cases. The first line of cases — *Coyne* v. *John S. Tilley Co.*, 368 Mass. 230 (1975), *Kenney* v. *Sears, Roebuck & Co.*, 355 Mass. 604 (1969), and *Carney* v. *Bereault*, 348 Mass. 502 (1965) — involves negligent manufacture of a product; the other line — *Selissen* v. *Empire Bottling Co.*, 343 Mass. 779 (1962), and *Evangelio* v. *Metropolitan Bottling Co.*, 339 Mass. 177 (1959) — involves the explosion of bottles, a type of case which appears to be a specific subset of negligent manufacture actions. In both these types of cases, a particular product, rather than a line of products, is alleged to be defective because of negligence in the manufacturing process. Because the defect is alleged

to have been caused by a manufacturing error affecting only one particular product, to show that the defect is attributable to the manufacturer, the plaintiff must show that it was not caused by intermediaries. In a case alleging negligent design, this showing is not logically necessary since the distribution by the manufacturer of a product with a particular design is sufficient to show that the claimed defective design is attributable to the manufacturer.

In the present case there was sufficient evidence to allow the jury to infer that the snowmobile left Ariens with the two sharp metal protrusions on the brake bracket. John Burns testified that he sold the snowmobile in which Smith was injured to Franklin Neville in 1969. Burns had purchased the snowmobile from the R.E. Jarvis Co., a distributor of various products. Ariens snowmobiles from Jarvis would arrive at Burns's place of business in a crate, partially assembled. However, the brake clamps arrived riveted to the handle bar and the brake bracket protruded above the handle bar. This evidence was sufficient for the jury to find that the riveting of the brake clamps was performed by the manufacturer, Ariens, and thus that the design defect existed when the snowmobile left Ariens. There was also evidence that other Ariens snowmobiles had brake brackets which protruded above the handle bar. From this testimony it could be inferred that the brackets were designed in that fashion by Ariens and therefore that the alleged defect was present when the snowmobile left Ariens.

We take this opportunity to reiterate the principle that the better procedure in a case in which it is a close question whether the standard for granting a directed verdict is met is to allow the matter to go to the jury. If the judge then decides that the jury's verdict cannot stand, a motion for judgment notwithstanding the verdict may be allowed. See *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974, 975 (1976); Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). This procedure is more efficient than initially allowing a motion for a directed verdict. If the granting of the motion for judgment notwithstanding the verdict is found to be erroneous

on appeal, the jury's verdict can be reinstated, while the erroneous granting of the motion for a directed verdict requires a new trial.

The judgment of the Superior Court is reversed and a new trial is ordered.

*So ordered.*