Sosman, J.
Plaintiff, Dr. Judson Somerville, has brought the present action complaining of injuries he sustained in a bicycle accident on August 5, 1990. He asserts claims of negligence and products liability against defendants, the designers, manufacturers and distributors of the bicycle and its allegedly defective parts. Defendants have moved for summary judgment arguing that plaintiffs have no reasonable expectation of proving that the allegedly defective components of the bicycle proximately caused the accident. In addition. defendants Hutchinson S.A., Hutchinson S.N.C., and Hutchinson S.r.L. (Hutchinson) move for summary judgment contending that they did not manufacture the tire in question and that the court does not have personal jurisdiction over them. The third-party defendant. Saiag SpA, moves for summary judgment arguing that plaintiffs’ claims against it are time-barred. For the following reasons, defendants motions for summary judgment are DENIED.
Facts
Viewed in the light most favorable to plaintiff, the evidence is as follows:
On August 5, 1990, plaintiff Dr. Judson Somerville, accompanied by his friends and colleagues Dr. Paul Edwards, Dr. Roy Opsahl, and Dr. Roger Phillips, was riding his bicycle on Mt. Wachusett. As the four proceeded down the mountain, Somerville was in the lead, followed closely by Phillips and then Edward and Opsalh. At a curve in the road where he was out of sight of the other three riders, Somerville lost control of his bicycle and crashed at the side of the road. Somerville does not remember how the accident occurred. He remembers applying his brakes, and the next memory he has is of being transported from the scene by helicopter. There were no other witnesses to the accident.
Edwards was the first to come on the accident scene. He viewed the remains of the bicycle, noticing that the rim was “mangled” and “broken.” The front and rear tires were off the rims. Edwards also observed a “nice sharp well delineated mark” in the asphalt leading directly to the site of Somerville’s crash. Edwards described the mark in the road as consistent with the size of the rim of Somerville’s tire.
The Princeton police were summoned to the scene. The police report contains a diagram of the accident *431 site showing the location where the bicycle and Som-erville were found after the accident. The diagram also shows that the road was curved at the location of the accident.
Following the accident but before litigation was contemplated, Somerville’s father had the bike fixed at a repair shop.[1] According to the shop invoice, the front wheel was out of round and out of plane. The shop cut and installed a front fork and relaced, respoked and installed a new front rim. No other work was done on the bicycle. The front rim involved in the accident was discarded, but the tires and the rear rim (which was identical to and purchased at the same time as the front rim) remain in the possession of plaintiffs and are available for inspection.
James M. Green, P.E., an expert in bicycle accident reconstruction, has opined that, to a reasonable degree of engineering certainty, Somerville’s accident was more probably than not caused by a separation of the front tire from the front rim. The most probable cause of the separation, according to Green, is a mismatching of the tire and the rim and inadequate application of tire cement. Green opines that the tire and rim were unreasonably dangerous and defective because they lacked warnings and instructions concerning proper matching of sizes and proper use of adhesives.
Green’s opinion is based on Edward’s observations at the scene of the accident, the police report, Somerville’s medical records, an examination of the front tire, his own experiments on tire/rim separation and a road test of Somerville’s bicycle. Green conducted laboratory tests to determine whether a tire and rim similar to those used by plaintiff are likely to separate under certain conditions. In his experiments Green used tires and rims the same size as those on plaintiffs bicycle. He determined that, without adhesive. the tire would separate from the rim at an angle of inclination of 18 to 20 degrees. In Green’s road test of Somerville’s bicycle, he found all other parts to be in good working order.
Plaintiff alleges that defendants Toshoku America, Inc. and Toshoku Ltd. designed, manufactured and distributed the Fuji bicycle that Somerville was riding. Defendants Mavic, Inc. and MavicS.A. designed, manufactured and distributed the rims on the bicycle. Defendant Performance Inc. sold the bicycle rims on the bicycle. Plaintiffs allege that defendants Hutchinson S.A., Hutchinson S.N.C., Hutchinson S.r.l., Hutchinson Corp., and Hutchinson Industries, Inc. designed, manufactured and distributed the tires on the bicycle. Defendant Bicycle Alley, Inc. (“Bicycle Alley”) sold the tires on the bicycle.
The name and logo of “Hutchinson” appear on the front tire, along with the name and logo of “Gommitalia, SpA.” Gommitalia was a subsidiary of Hutchinson, but Hutchinson sold Gommitalia to Saiag SpA (Saiag) in 1983. Under the terms of the Purchase and Sale Agreement for Gommitalia, Saiag was not to use the Hutchinson name on any Gommitalia tires. In addition to the Hutchinson and Gommitalia names imprinted on Somerville’s tire, the tire also bears the label “Servizio Corse” and “BIT-300.” Hutchinson has evidence that it did not manufacture a tire model “BIT-300 Servizio Corse,” but that Gommitalia, while it was a subsidiary of Saiag, did market such a model. On April 6, 1994, the court (Lenk, J.) allowed defendant Hutchinson’s motion to file a third-parly complaint against Saiag. The third-party complaint for contribution and indemnity alleges that Saiag, and not Hutchinson, manufactured the tire on Somerville’s bicycle. On August 4, 1994, plaintiffs asserted claims against Saiag in negligence and breach of warranty alleging that Saiag designed, manufactured, and distributed the tires on the bicycle that Somerville was riding. Saiag has denied that it manufactured the bicycle tire in question.
Hutchinson S.N.C. distributes tires manufactured by other companies. The only customer in the United States to which Hutchinson, S.N.C. has sold bicycle tires is Sampson Sports, Inc. located in Denver, Colorado. Somerville purchased his bicycle tires at the Bicycle Alley shop in Massachusetts.
Discussion
I. Causation
Defendants argue that plaintiff has no reasonable expectation of proving that any negligence on their part or defect in their product caused Somerville’s accident. With no witnesses to the accident and a paucity of evidence pertaining to the accident, defendants contend that any finding as to causation would have to be based on impermissible conjecture.
Plaintiff has provided the opinion of Green, a qualified expert in bicycle accident reconstruction, that this accident was more probably than not caused by a separation of the front tire from its rim. Green’s opinion, if admissible, would create a genuine issue of material fact on the issue of causation and defeat defendants’ summary judgment motion.
The defendants have moved to strike Green’s affidavit, arguing that there is no factual basis for his opinion that could be supported on the present record. The record amply supports a finding that, at some point during the accident, the tire separated from the rim. Edwards saw the bicycle immediately following the accident, and he observed that both the front and rear tires were separated from the rims. Edwards also observed a gouge in the road consistent with the mark that would be left by the rim.
Defendants contend, however, that the tire/rim separation may have occurred in the course of the accident without necessarily causing the accident. They suggest that it is just as likely to conclude that the accident caused the tire/rim separation as it would be to conclude that the separation caused the *432 accident. Thus, the defendants argue that the jury could not, without indulging in speculation, conclude that it is more probable than not that the tire/rim separation was a substantial contributing factor to the accident itself.
Again, Green has opined that there is, more probably than not, such a connection between the tire/rim separation and Somerville’s loss of control of the bicycle. Green, with extensive experience analyzing bicycle accidents, has never seen an accident cause a tire to separate from the rim except in cases of severe vehicle collision. He is thus able to opine that it is unlikely that Somerville’s accident, which did not involve any collision with a vehicle, caused the tire to separate from the rim. He has also opined as to how the separation could occur prior to the accident occurring. Green’s inspection of the front tire revealed no trace of any adhesive. Green’s laboratory tests showed that, without the use of adhesives, a tire/rim separation will occur at a given angle of inclination. The accident occurred as Somerville’s bicycle was going into a curve, which would create such an angle of inclination. The jury could infer that the sudden and unexpected separation of the tire from the rim would cause the rider of the bicycle to lose control.
To make out the element of causation, plaintiff does not need to show the exact mechanism by which his accident occurred. Sometimes even in the absence of showing precisely how an incident occurred, a plaintiff can establish that a suggested scenario is more probable than not. For example in Fund v. Lenox Hotel, 418 Mass. 191 (1994), plaintiff brought a wrongful death claim against a hotel based on alleged negligence in failure to provide security. The identity of the person who had attacked the hotel guest was never established. Defendant argued that absent conjecture, plaintiff could not establish that it was an unlawful intruder as opposed to someone lawfully on the hotel premises that had perpetrated the attack. The court ruled that plaintiff could prove causation by a preponderance of the evidence by showing that other explanations were, though possible, less likely to have occurred.
The present case is comparable to Fund. Plaintiff can not reconstruct exactly how his accident occurred, nor can he rule out the possibility that some other factor caused him to lose control of his bicycle. However, he has come forward with evidence showing a substantial likelihood that the tire separating from the rim caused him to lose control and showing that other explanations for his accident are unlikely. That is sufficient to establish causation by a preponderance of the evidence.
Defendants raise other objections to Green’s opinion testimony, none of which has merit. Defendants argue that Green’s opinion should be excluded because he does not know some of the facts surrounding the accident. Green is a qualified expert in bicycle accident reconstruction and his opinion is well within his expertise. The fact that Green does not know certain facts concerning the accident does not render his opinion inadmissible. Simmons v. Monarch Machine Tool Co., 413 Mass. 205, 212 (1992).
Defendants next argue that Green’s opinion should be stricken because, in his deposition he acknowledged that he made certain “assumptions” in reaching his opinion. Green’s use of the term “assumption” does not mean that he is “assuming” something that would not be supportable on the evidence. For example, defendants argue that Green “assumed” that the brakes on the bike were working properly. Green based that “assumption” on the tests he conducted on the bicycle in 1993, at which time the brakes were in good working order. Although there is evidence that the bike was repaired after the accident, the repair invoice does not indicate that any work was done on the brakes. It would thus be permissible for the jury to infer that the brakes functioning properly in 1993 without any adjustment since the accident, were also functioning properly on the day of the accident. Green’s “assumption” about the brakes is based on a permissible inference, and his use of the term “assumption” does not render his opinion speculative.
Defendants also argue that Green’s opinion is based on experimental tests which are not reliable and are not sufficiently probative. The determination of whether experiments are admissible is largely within the discretion of the trial judge.
As with evidence of other accidents similar to the plaintiff, the admissibility of experimental evidence is subject to the trial judge’s determination that its probative value outweighs the possibility that it will mislead or prejudice the jury. A prime consideration is whether the experiment was conducted under conditions substantially similar to those which gave rise to the plaintiffs accident, so that the jury can infer “something material” about the cause of the plaintiffs accident.
Read v. Mt. Tom Ski Area, Inc., 37 Mass.App.Ct. 901, 903-04 (1994).
Green’s laboratory experiments were conducted with wheels and rims the same size as those on Somerville’s bicycle. Those experiments are probative as to whether the accident was caused by a tire/rim separation. It is true that Green did not use glue in his experiment, and there is some evidence that Somer-ville may have used glue to mount the tire onto his bicycle. That possible discrepancy does not eliminate all probative value of Green’s experiment. At the least, Green’s experiments demonstrate that the fit of the tire to the rim is not sufficient without proper adhesive to avoid separation under ordinary use of the bicycle.
Defendants also argue that Green is not an expert on “adhesive failure” and therefore cannot give an opinion that proper warnings concerning the need for sufficient glue would have prevented Somerville’s ac *433 cident. Green is certainly an expert on the proper mounting of bicycle tires. His opinion that the use of sufficient glue is part of a proper mounting of the tires is well within his expertise. His opinion that the mismatched tire/rim size combined with inadequate instructions on proper use of adhesives, was the likely cause of Somerville’s accident is also well within his expertise.
Defendants finally argue that Green’s testimony should be stricken because plaintiffs father allowed the original front rim to be discarded when the bicycle was repaired. Opinion evidence is to be excluded if it is based upon the expert’s examination of physical evidence which has since been destroyed. The purpose of the rule is to prevent the prejudice which would result if one party’s expert were the only expert with access to the physical evidence. Bolton v. Massachusetts Bay Transportation Authority, 32 Mass.App.Ct. 654, 656-57 (1992); Nally v. Volkswagen of America, Inc., 405 Mass. 191, 198 (1989). In the instant case, Green never examined the subject rim. His testimony is not based upon any evidence to which the defendants do not have access. Furthermore, there is no indication that the destruction of this item of evidence was anything other than inadvertent. Plaintiff, who has the burden of proof, will be as prejudiced as defendants (if not more so) by the inadvertent destruction of the front rim.
II. Identity of the tire manufacturer
Defendant Hutchinson argues that it is entitled to summary judgment because plaintiff has no reasonable expectation of proving that Hutchinson manufactured the tire in question. Hutchinson’s name appears on the tire. Where plaintiff has shown that the name on the product and the name of the defendant are the same, that is sufficient to establish that the defendant manufactured the product. Smith v. Ariens Co., 375 Mass. 620, 623 (1978).
Hutchinson contends that the prima facie rule of Smith should not apply to this case because the name and logo of Gommitalia, a subsidiary of Saiag since 1983, is also on the tire. Hutchinson argues that the presence of both the name of its company and another company’s current subsidiary creates an ambiguity which prevents the rule of Smith from operating. Hutchinson has presented uncontroverted evidence that it did not manufacture the model in question, that Saiag manufactured that model (as listed in Saiag’s catalogue), and that Saiag continued to imprint the Hutchinson logo on the tires in direct violation of the Purchase and Sale Agreement for Gommitalia.[2]
The rule in Smithis not overcome simply by producing evidence tending to show that the party whose name appears on the item is not in fact the manufacturer. “[DJefendant may introduce evidence indicating that it is not the manufacturer of the particular product, but the plaintiffs burden of presenting sufficient evidence to identify the defendant as the manufacturer is satisfied by showing that the name on the product and the name of the defendant are the same.” 375 Mass. at 623 (citations omitted). Somerville has met that burden by evidence of the name on the tire, and it will be for the jury to determine whether to accept Hutchinson’s contrary evidence.
III. Jurisdiction over Hutchinson
Hutchinson argues that plaintiffs have no reasonable expectation of proving that it is subject to jurisdiction in the Commonwealth. On the present record all that plaintiff has established is that a tire with the Hutchinson name was purchased in a bicycle shop in Massachusetts. Plaintiff has not come forward with evidence of any other contact between Hutchinson and Massachusetts.
Hutchinson, S.N.C did distribute tires in this country, but sold exclusively to a company in Denver, Colorado. Thus, all this record demonstrates is that Hutchinson put product into the stream of commerce in Colorado.
To establish the requisite minimum contacts with the forum state, plaintiff must show “some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.” Asahi Metal Industry Co. v. Superior Court of California. 480 U.S. 102, 108-09 (1987). However:
The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant’s awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.
Id. at 112.
According to Asahi, the mere presence of a single Hutchinson tire in a shop in Massachusetts is insufficient to establish personal jurisdiction over Hutchinson. The sale of product to a shop in Colorado, even assuming that the sale was made with knowledge that product would later be sold in Massachusetts does not suffice to subject Hutchinson to jurisdiction in Massachusetts.
However, plaintiffs have argued that further discovery may uncover some basis for asserting jurisdiction over Hutchinson. In light of plaintiffs need to conduct discovery on this issue, and the fact that a Hutchinson tire was purchased in Massachusetts with *434 Hutchinson’s name and logo upon it, Hutchinson’s motion is denied without prejudice. If, after the close of discovery, plaintiff has still not adduced evidence sufficient to meet the minimum contacts test as outlined in Asahi Hutchinson may renew its motion for summary judgment at that time.
IV. Statute of limitations
Saiag argues that plaintiffs’ claims against it are barred by the relevant statutes of limitation. G.L.c. 260, §2A (negligence); G.L.c. 106, §2-318 (products liability).[3] The suit was timely filed against the original defendants, being filed less than three years from the date of Somerville’s accident. Saiag was brought into the case by Hutchinson’s third-party complaint in April 1994, eight months after the original statute of limitations expired. Saiag was served with the third party complaint in June 1994. In August 1994, plaintiff filed his own direct claims against Saiag pursuant to Rule 14(a).
Plaintiffs claims against Saiag, although technically made pursuant to Rule 14(a), are akin to claims in an amended pleading to add a party defendant. When an amended pleading states claims against a new party, the amended claims relate back to the date of filing of the original complaint as long as they arise out of the same conduct, transaction, or occurrence as the original complaint. Issues of prejudice arising from the running of the statute of limitations are addressed, not in the determination of whether the amendment relates back, but, rather, in the decision whether to allow the motion to amend. “The policies which support the extinguishment of claims after limitations periods speak against allowing such amendments against new defendants. They do not speak conclusively, but they are to be considered and weighed.” Christopher v. Duffy, 28 Mass.App.Ct. 780, 785 (1990).
While the statute of limitations is a consideration upon a motion to amend it is the prejudice which results from the delay, not the technical running of the statute, which would justify denial of a motion to amend. In the present case, Saiag can not show any prejudice from the brief delay before it was brought into this suit. The delay here amounted to ten months — the statute of limitations expired on August 5, 1993, and Saiag was served as a third-party defendant in early June 1994. Although plaintiffs Rule 14(a) claim was not filed until August 4, 1994, Saiag was on notice of its involvement in this action by way of the third-party complaint.[4]
Saiag argues that it is prejudiced by the destruction of the front rim of Somerville’s bicycle and the alterations to the bicycle. That physical evidence was destroyed and/or altered immediately following the accident, long before the statute of limitations expired. The ten month delay in impleading Saiag did not have any effect on Saiag’s access to physical evidence. Saiag’s conclusory assertion that it has been prejudiced due to the “stage of discovery” is too vague to support its present motion. Saiag was brought into the case well before the close of discovery, and Saiag’s need for discovery can be readily accommodated.
ORDER
For the foregoing reasons, defendants’ motions for summary judgment are DENIED.

Mr Somerville’s initial assumption was that his son’s accident was due to excessive speed coming down the mountain. He therefore did not see any reason to preserve evidence pertaining to the crash.

Hutchinson was the parent company of Gommitalia prior to 1983. The presence of the Gommitalia logo on the subject tire is therefore not necessarily inconsistent with the allegation that Hutchinson manufactured this tire. Neither party has directed the court to any evidence concerning the date on which the subject tire was purchased.

Saiag previously raised this argument in a motion to dismiss, which was denied by this court (Donohue, J.). Although recast as a motion for summary judgment, the legal issue underlying Saiag’s motion has not changed. As a simple application of the law of the case, the motion should be denied.

If, as Hutchinson contends, Saiag’s role as the manufacturer was obscured by Saiag’s improper use of Hutchinson’s label, it would be particularly unjust to let Saiag benefit from its mislabeling of the tire. A company that mislabels its product, in violation of the contract by which it obtained the right to manufacture and market the product, can not complain when the confusion it has created results in a brief delay in identifying the true manufacturer.