# United States Court of Appeals
## For the First Circuit

No. 10-1824

CARLOS OSORIO,
Plaintiff, Appellee,

v.

ONE WORLD TECHNOLOGIES, INC. and
RYOBI TECHNOLOGIES, INC.,
Defendants, Appellants,

HOME DEPOT U.S.A., INC.,
Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before
Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

---

William L. Boesch, with whom Sugarman, Rogers, Barshak & Cohen, P.C., Michael S. Appel, Susan A. Hartnett, and William F. Benson, were on brief for appellants.

George F. Carpinello, with whom Teresa A. Monroe, Angus W. Dwyer, Stuart H. Singer, Joshua P. Riley, Boies, Schiller & Flexner, LLP (New York and Florida), Sullivan & Sullivan, LLP, Richard J. Sullivan and Owen R. O'Neill, were on brief for appellee.

David R. Geiger, Joseph P. Lucia, and Foley Hoag LLP, on brief for The Product Liability Advisory Council, Inc., amicus curiae.

---

October 5, 2011

---

**TORRUELLA**, **Circuit Judge**. Appellee Carlos Osorio ("Osorio") filed a diversity suit against appellants One World Technologies, Inc. and Ryobi Technologies, Inc. (collectively, "Ryobi")[1] in the United States District Court for the District of Massachusetts. The complaint alleged claims arising from a hand injury suffered in a construction site accident involving one of Ryobi's table saws. After an eight-day jury trial, the jury found for Osorio and awarded damages of $1.5 million. Ryobi then filed a motion for judgment as a matter of law and for a new trial, which the district court denied. Ryobi now appeals these decisions. After careful consideration, we affirm the district court's decisions on both matters.

## I. Background

On April 19, 2005, Osorio suffered a hand injury while he operated a Ryobi Model BTS15 benchtop table saw (hereinafter, the "BTS 15"). At the time, Osorio worked on a construction site for his employer, a contractor who repairs and installs hardwood floors. Earlier that year, his employer had purchased the BTS 15

---

[1] One World Technologies, Inc. and Ryobi Technologies, Inc. merged in December 2004, and Ryobi Technologies, Inc. no longer exists as a separate company. However, Ryobi Technologies, Inc. manufactured the product at issue in this case and the parties refer to Defendants-Appellants as "Ryobi" in their briefs. Accordingly, for simplicity, this opinion will also refer to Defendants-Appellants as "Ryobi."

at a Home Depot store for $179.[2] As Osorio used the BTS 15 to make a cut along the length of a piece of wood, his left hand slipped and slid into the saw's blade, causing severe injury.

Osorio sued Ryobi, the manufacturer of the saw, claiming negligence and breach of the implied warranty of merchantability.[3] At trial, Osorio argued that the BTS 15 was unacceptably dangerous due to a defective design. Osorio largely relied on the testimony of his witness, Dr. Stephen Gass, inventor of "SawStop," a mechanism that allows a table saw to sense when the blade comes into contact with flesh, immediately stops the blade from spinning, and causes it to retract into the body of the saw. Dr. Gass testified that since he developed SawStop in 1999, he has presented the technology to several major manufacturers of table saws, including Ryobi in 2000. To date, none of the major power tool manufacturers has adopted SawStop. Osorio alleged that the manufacturers' failure to incorporate SawStop into their designs is due to a collective understanding that if any of them adopts the technology, then the others will face heightened liability exposure for not doing so as well.

---

[2] There are three generally-recognized categories of table saws -- benchtop saws, contractor saws, and cabinet saws. Cabinet and contractor saws are large and designed for use in an industrial or large workshop setting such as woodworking shops. Benchtop saws like the BTS 15 at issue are smaller, often portable, and less expensive than the other two categories.

[3] Osorio also sued Home Depot U.S.A., Inc. However, Home Depot was not found liable at trial and is not involved in this appeal.

The trial had an element of comparative negligence, which is not being appealed, but which had an effect on the evidence introduced at trial. After an eight-day trial, the jury returned a verdict in favor of Osorio and awarded damages of $1.5 million. The jury also found that Osorio was negligent and thirty-five percent at fault for the accident. However, this finding of comparative negligence did not affect the award of damages, as the jury also found Ryobi liable for breach of the implied warranty of merchantability.

Following the trial, Ryobi moved for judgment as a matter of law, alleging that Osorio did not meet an obligation to present a feasible alternative design. In the alternative, Ryobi moved for a new trial based on plaintiff's counsel's alleged prejudicial misconduct. The district court denied the motion. Osorio v. One World Techs., Inc., 716 F. Supp. 2d 155, 158 (D. Mass. 2010). Ryobi now appeals.

## II.  Discussion

Although the parties frame the issues differently, Ryobi essentially presents three arguments on appeal. First, Ryobi contends that Osorio failed to present sufficient evidence to support the jury's verdict in his favor on design defect grounds. Second, Ryobi argues that Osorio's counsel committed misconduct at trial that prejudiced Ryobi's defense. Third, Ryobi claims the district court should not have permitted Osorio's expert to

discredit the BTS 15's design in ways Ryobi alleges were irrelevant to the case and contests the district court's refusal to allow it to show excerpts from a video deposition of Osorio.  We address each argument in turn.

## A.  Sufficiency of the Evidence Claim and Categorical Liability

We review the district court's denial of a defendant's motion for judgment as a matter of law de novo.  Morales-Vallellanes v. Potter, 605 F.3d 27, 33 (1st Cir. 2010).  In doing so, we consider "the evidence presented to the jury, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict."  Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010) (quoting Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 8 (1st Cir. 2001)).  We will only reverse the district court's denial of Ryobi's motion "if the facts and inferences point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have reached a verdict against that party."  Santos v. Sunrise Med., Inc., 351 F.3d 587, 590 (1st Cir. 2003) (quoting Star Fin. Servs., Inc. v. Aastar Mortg. Corp., 89 F.3d 5, 8 (1st Cir. 1996)) (internal quotation marks omitted).

### 1.  Sufficiency of the Evidence to Prove a Design Defect

Under applicable Massachusetts law, warranty liability is "a remedy intended to be fully as comprehensive as the strict liability theory of recovery [of many other] jurisdictions."  Back

-5-

v. Wickes Corp., 378 N.E.2d 964, 968 (Mass. 1978). Accordingly, manufacturers must design products so that they "are fit for the ordinary purposes for which such goods are used." Mass. Gen. Laws ch. 106, § 2-314(2)(c). "A product is 'reasonably fit' for its purposes if the design prevents the 'reasonably forseeable [sic] risks attending the product's use in that setting.'" Marchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 698 (1st Cir. 1988) (quoting Back, 378 N.E.2d at 970). Thus, Massachusetts law is "congruent in nearly all respects with the principles expressed in the Restatement (Second) of Torts § 402A." Back, 378 N.E.2d at 969.

A reasonably fit product need not be a risk-free product, however. "Even where the product design creates a risk of foreseeable harm, the question is whether this risk was unreasonable." Marchant, 836 F.2d at 698 (quoting Raney v. Honeywell, Inc., 540 F.2d 932, 935 (8th Cir. 1976)) (internal quotation marks omitted); see also Restatement (Second) of Torts § 402A. Guiding our judgment in the instant case, the Supreme Judicial Court of Massachusetts has explained that relevant factors to assess the suitableness of a product's design include:

> [1] the gravity of the danger posed by the challenged design, [2] the likelihood that such danger would occur, [3] the mechanical feasibility of a safer alternative design, [4] the financial cost of an improved design, and [5] the adverse consequences to the product and to the consumer that would result from an alternative design.

Back, 378 N.E.2d at 970 (quoting Barker v. Lull Eng'g Co., 573 P.2d 443 (Cal. 1978)) (internal quotation marks omitted).  The jury is free to balance all competing factors, including the perceived feasibility of a proposed alternative design.  See Marchant, 836 F.2d at 699-700.  As a result, "plaintiff's case is not automatically defeated merely because the alternative design was not being used at the material time."  Id. at 699.

Ryobi argues that Osorio failed to meet a prima facie obligation to present a reasonable alternative design for the product at issue that accounted for the weight, cost, and other features particular to the BTS 15.  This amounts to two arguments: that the record evidence was insufficient to permit the jury to make a reasoned determination and that Massachusetts law requires a prima facie showing on all of these factors.  Both are incorrect.

Because the evidence at trial showed that a benchtop saw that incorporated SawStop into its design would likely be larger, heavier, and more expensive than the BTS 15 at issue, Ryobi insists that Osorio's proffered design falls short of being a viable alternative.  Accordingly, Ryobi would like us to conclude that Osorio did not meet his burden and hold that Ryobi is entitled to judgment as a matter of law.

Operating -- as we must -- under the applicable Massachusetts principles, we do not conclude that the added cost or increased weight of Osorio's proposed alternative design is fatal

to his case as a matter of law. It is the province of the jury to determine whether the relevant factors, properly balanced, suggest that a product's design is unreasonable. See Back, 378 N.E.2d at 970. The increase in expense of a proposed alternative is but one of those factors and the jury was free to determine that the costs of such an alternative exceeded its benefits. Marchant, 836 F.2d at 700 (rejecting proposition that "plaintiff must prove that the alternative design was efficient on a cost/benefit basis"). Evidence relating to the mechanical feasibility or increased weight of an alternative design may be similarly balanced. Where, as here, the trial judge adequately instructed the jury as to the applicable multi-factored design defect test under Massachusetts law, we have not found reason to question the jury's findings. See id. ("Such an instruction [to the jury] is all that Back v. Wickes requires.").

The viability of adding SawStop to a small, portable saw was a major issue during the litigation, amounting to what the district court described as "hours of testimony on the cost and feasibility of incorporating the technology into the BTS 15 . . . ." Osorio, 716 F. Supp. 2d at 157. At trial, Osorio's expert offered testimony that a benchtop saw like the BTS 15 that incorporated SawStop flesh-detection technology could still be carried between jobsites. The jury also heard testimony suggesting that Ryobi was in the process of developing flesh-detection

-8-

technology through a joint venture with competing manufacturers. With regards to cost, the record reveals that over the course of an eight-day trial the jury had ample opportunity to hear the parties' competing propositions on the issue. On Osorio's behalf, Dr. Gass testified that SawStop technology would add "less than $150" to the price of a table saw and Osorio's other expert witness, Mr. Robert Holt, seems to have accepted this figure. On cross-examination, Ryobi probed and challenged Osorio's proposed alternative design. Pressed by Ryobi's counsel, Dr. Gass testified that the SawStop flesh-detection system can trigger without having actually been touched by a person, particularly when cutting wet or pressure-treated wood. Because portable saws used by contractors are sometimes exposed to the elements and rough treatment, the jury heard testimony that these conditions could increase the chances of a malfunction of the SawStop system. Finally, the parties also disputed whether a small benchtop saw like the BTS 15 could properly absorb the force necessary to stop a rapidly spinning saw blade.

Secondly, as a matter of law, we do not find support for Ryobi's suggestion that a plaintiff asserting a design defect claim must present an alternative design that meets all the above-cited Back factors prima facie. Quite the opposite, all Massachusetts law requires is that "competing factors should be balanced when

deciding reasonableness of design." Marchant, 836 F.2d at 699-700 (internal quotation marks omitted).

In Marchant, we addressed an argument similar to the one Ryobi advances, where the district court had granted defendants' motion for judgment as a matter of law on the grounds that a plaintiff asserting a design defect claim did not "prove to the jury the cost/benefit efficiency of the alternative design." Id. at 699. Reinstating the jury's verdict in favor of the plaintiff, we rejected the defendants' claim that "the plaintiff must prove that the alternative design was efficient on a cost/benefit basis." Id. at 700. Pertinent to the instant case, we also noted that where the defendant manufacturer felt its product's design was reasonable, it was "its responsibility to produce evidence in support of such a theory." Id.

Ryobi's claim that Osorio needed to make a prima facie showing of a feasible alternative design meeting the Back factors is also undermined by the Massachusetts Supreme Judicial Court's decision in Smith v. Ariens Co., 377 N.E.2d 954 (Mass. 1978), which guided our analysis in Marchant. In Marchant, we explained:

> In Smith . . . the SJC upheld a verdict that a snowmobile was designed such that an unreasonable risk of harm was created, where the only evidence relied upon by the jury was the snowmobile itself. Not only did the plaintiff in Smith fail to address the costs and efficiencies of alternative designs, but no alternatives were even suggested.

-10-

836 F.2d at 700 (internal quotation marks omitted). Contrary to Ryobi's claim, Smith, then, suggests that Massachusetts product liability law may tolerate a finding of design defect even in the absence of evidence supporting the existence of a feasible alternative design. See Smith, 377 N.E.2d at 957 ("[I]n cases in which a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury, expert testimony that a product is negligently designed is not required.").[4]

## 2. Categorical Liability

### a. Waiver

As a corollary to its sufficiency argument, Ryobi claims that Osorio's suit is essentially an attempt to hold a manufacturer liable for injuries caused by its product in the absence of a conventional defect and despite the fact that a feasible safer alternative is not available, a "categorical liability" theory that courts have traditionally rejected. See, e.g., Kotler v. Am. Tobacco Co., 926 F.2d 1217, 1224-25 (1st Cir. 1990) ("The pivotal question . . . is whether, in the absence of a non-inherent defect, breach of warranty can be found based solely on a risk/utility analysis. We think this question must be answered in the

---

[4] Guided by these principles, we also reject as contrary to Massachusetts law amicus's claim that the feasibility of a product is most readily demonstrated by the product already being on the market. See Back, 378 N.E.2d at 970 ("[C]ounsel may argue that industry standards can and should be more stringent.").

negative."), vacated, 505 U.S. 1215, aff'd on remand, 981 F.2d 7 (1st Cir. 1992). However, before we examine the merits of Ryobi's claim, we must resolve a threshold matter: whether, as Osorio contends, Ryobi failed to preserve its categorical liability argument by not including it in its motion for judgment as a matter of law at the close of the evidence.

A challenge to the sufficiency of the evidence such as the one Ryobi presses on appeal must first be raised at the close of all the evidence at trial. See Fed. R. Civ. P. 50(a)(2); Sánchez v. P.R. Oil Co., 37 F.3d 712, 723 (1st Cir. 1994). If, as in the instant case, the district court denies the litigant's motion for judgment as a matter of law and the case is submitted to the jury, "the movant must renew the motion once again in order to preserve the issue for appeal." Zachar v. Lee, 363 F.3d 70, 73-74 (1st Cir. 2004) (citing Fed. R. Civ. P. 50(b)). Under Rule 50(b), a renewed motion must limit itself to the issues raised in a movant's prior Rule 50(a) motion. Parker v. Garrish, 547 F.3d 1, 12 (1st Cir. 2008); Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995).

Ryobi conceded in its Rule 50(a) motion that Osorio had "presented evidence critical of the [BTS 15]," but argued that Osorio had "failed to offer sufficient evidence for the jury to conclude that the subject saw was not designed with reasonable care or that the saw was both defective and unreasonably dangerous."

The district court denied this motion. Ryobi's Rule 50(b) motion for judgment as a matter of law renewed this sufficiency attack, but also accused Osorio's expert witnesses of advancing "the position that the [BTS 15] and all low-cost portable benchtop table saws like it are inherently unsafe and should not be sold." Osorio, Ryobi asserted, could not "invoke Massachusetts' product liability law to impose categorical liability on a class of products." As before, the district court denied this motion. On appeal, Ryobi revives the arguments it set forth in its Rule 50(b) motion.

We do not find that Ryobi waived the categorical liability argument it now asks us to consider. The crux of Ryobi's argument is that Osorio did not show that a feasible alternative design for an inexpensive, lightweight benchtop table saw like the BTS 15 existed. The alternative design Osorio proposed at trial, Ryobi's argument continues, would drastically alter a saw like the BTS 15, resulting in a heavier, less portable, and more expensive product. Ryobi maintains that its categorical liability argument simply seeks to "flesh[] out" the question of whether Osorio satisfied his burden of presenting an alternative design for the BTS 15 -- an issue contested at each stage of the litigation. Reviewing the record, we agree.

Throughout the litigation, Ryobi has argued that SawStop could not be incorporated into the BTS 15's design without

radically altering the nature of the product and its cost. Accordingly, we believe that Ryobi's failure to explicitly invoke "categorical liability" in its pre-judgment Rule 50(a) motion did not constitute a waiver of its argument. See Lynch v. City of Boston, 180 F.3d 1, 13 n.9 (1st Cir. 1999) ("[Rule 50(a)] does not require technical precision in stating the grounds of the motion. It does require that they be stated with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion." (citing 9A C. Wright & A. Miller, Federal Practice and Procedure, § 2533, at 310-11 (1995))).

### b. Osorio's Suit as Impermissible Categorical Liability

Ryobi claims that instead of presenting a viable alternative design, Osorio set out to prove that the entire category of lightweight, inexpensive, benchtop table saws to which the BTS 15 belongs was defective, in part because the saws' manufacturers have not incorporated flesh-detection braking systems into their designs. Taken to its logical conclusion, Ryobi contends, Osorio's theory would hold manufacturers of portable and economical benchtop saws liable for all injuries suffered by victims of accidents involving their products.

To support its argument, Ryobi cites several cases, namely the Fourth Circuit's decision in Dreisonstok v. Volkswagenwerk, A.G., 489 F.2d 1066 (4th Cir. 1974). In that case, the district court, sitting without a jury, found that the product

-14-

at issue, a Volkswagen microbus, was defective because it was not as "crashworthy" as a standard passenger car. The Fourth Circuit reversed, concluding that the Volkswagen microbus had specific features -- such as maneuverability, low cost, and its utility to transport people or cargo -- that made it attractive to many consumers. Id. at 1073-76. The Dreisonstok court explained that these features involved safety tradeoffs discernible to consumers and rejected what it saw as the plaintiff's call to impose a "strait-jacket on design" by requiring that all vehicles conform to the standards of another class of vehicle. Id. at 1075.

Ryobi concedes that its cited examples of the categorical liability theory are often clear about plaintiffs' intentions, for example, by attempting to impose liability for injuries caused by an entire class of products. Accordingly, in Kotler, cited by some commentators as a classic categorical liability case,[5] we were unwilling to hold a manufacturer liable for alleged design defect based on a theory that its cigarettes were inherently defective. See 926 F.2d at 1225 ("Appellant's design initiative rested not on the contention that appellees' cigarettes could have been made safer, but solely on the considerably different contention that the

---

[5]  See, e.g., Richard C. Ausness, Product Category Liability: A Critical Analysis, 24 N. Ky. L. Rev. 423, 439-40 (1997); Harvey M. Grossman, Categorical Liability: Why the Gates Should be Kept Closed, 36 S. Tex. L. Rev. 385, 391 n.19, 392 n.25 (1995); Ellen Wertheimer, The Smoke Gets in Their Eyes: Product Category Liability and Alternative Feasible Designs in the Third Restatement, 61 Tenn. L. Rev. 1429, 1432 n.7 (1994).

cigarettes were defective because the risks inherent in their consumption . . . outweighed their social utility."). However, Ryobi posits that the categorical liability concept extends beyond those cases into others where the claim is more subtle. As examples, Ryobi points us to two cases.

In the first, Wasylow v. Glock, Inc., 975 F. Supp. 370 (D. Mass. 1996), the district court rejected the plaintiff's challenge at the summary judgment stage, finding that a proposed alternative design for a handgun appeared both feasible and safer, but would alter the product's "functional purpose." 975 F. Supp. at 379. In the second, Linegar v. Armour of America, Inc., 909 F.2d 1150 (8th Cir. 1990), the Eighth Circuit rejected a design defect challenge to a certain kind of bullet-resistant vest that offered less coverage than other models but allowed the user greater mobility and heat dissipation, among other features. 909 F.2d at 1154-55. Doing so, the Linegar court noted the likely effect on product availability of holding in the plaintiffs' favor, noting that "manufacturer[s] [are] not obliged to market only one version of a product, that being the very safest design possible. If that were so, automobile manufacturers could not offer consumers sports cars, convertibles, jeeps, or compact cars." Id. at 1154. Ryobi contends that, like Osorio's suit, these cases form part of the categorical liability catalogue because accepting the

-16-

plaintiffs' claim required a "fundamental disregard of the defining characteristics of the product at issue."

We are not convinced that Osorio's suit reaches into impermissible categorical liability. The absence of an alternative design is a defining characteristic of categorical liability theory. See Restatement (Third) of Torts: Products Liability § 2 cmt. d (1998); see also Harvey M. Grossman, Categorical Liability: Why the Gates Should be Kept Closed, 36 S. Tex. L. Rev. 385, 392 (1995) (noting the doctrine imposes liability "even though there is no . . . reasonable design alternative that could be used to avoid [] injuries"). Here, an alternative design was not only offered, but also discussed, examined, and debated. At the district court the parties explained and probed the merits of an alternative design incorporating the SawStop system. Ryobi repeatedly challenged Osorio's proposed design raising many of the arguments against SawStop it now raises on appeal, particularly on the issue of added weight. See Osorio, 716 F. Supp. 2d at 157. Just as we conclude that the evidence presented was sufficient to allow the case to reach the jury, it seems similarly plain that considering the evidence before it, the jury simply agreed with Osorio's case and found in his favor.

## B. Counsel's Alleged Misconduct at Trial

Ryobi's post-judgment motion to the district court also contained a request for a new trial under Fed. R. Civ. P. 59. On

appeal, Ryobi again points to several allegedly impermissible statements and other improper conduct on the part of Osorio's counsel that Ryobi says prejudiced its case to the extent that a new trial is necessary.  Ryobi claims that Osorio's counsel:  (1) sought to inflame the jury by repeatedly referencing Ryobi's size, earnings, and foreign ownership; (2) cited irrelevant and unsupported statistics of numbers of table saw accidents (including those attributed to Ryobi); (3) attempted to connect Ryobi with a ten-year power tool manufacturer conspiracy to keep flesh-detection technology off the market; and (4) improperly urged the jury to "send a message" to Ryobi management by finding for Osorio -- once explicitly, during opening statement and again, as an implicit "theme," at closing arguments after the judge advised against "introducing purely emotional elements" to the jury's deliberations.

We review the denial of a motion for a new trial for abuse of discretion, mindful of the deference due to the district court's judgment.  S.E.C. v. Happ, 392 F.3d 12, 26 (1st Cir. 2004). "In assessing the effect of improper conduct by counsel, the Court must examine the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself."  P.R. Aqueduct & Sewer Auth. v. Constructora

<u>Lluch, Inc.</u>, 169 F.3d 68, 82 (1st Cir. 1999).  We do not reverse in the absence of prejudice to the appellant's case.  <u>Santos</u>, 351 F.3d at 593.

While Ryobi does point us to some conduct that could be considered problematic, we are unconvinced that the district court abused its discretion in refusing to grant a new trial.  We are most concerned by counsel's suggestion during opening statements that the jury "send a message" to Ryobi management by imposing liability since, as Ryobi notes, we have deemed similar arguments improper in the past.  <u>See</u> <u>Smith</u> v. <u>Kmart Corp.</u>, 177 F.3d 19, 26-27 (1st Cir. 1999) (noting plaintiff's call to "send a message" was improper request for punitive damages).  Here, however, the district judge acted competently to prevent Ryobi's case from being prejudiced.  At trial, Ryobi objected to the use of the phrase "send a message" and Osorio's counsel asserted that he would refrain from using it during closing argument.  In light of counsel's assertion, the court then stated that it would not further restrict any statements, but warned both parties against "introducing purely emotional elements into jury deliberations." Although Ryobi claims that Osorio's counsel nevertheless then implicitly asked the jury to "send a message" during closing argument, we agree with the district court that plaintiff counsel's later statements to the jury were "within the bounds of propriety." <u>Osorio</u>, 716 F. Supp. 2d at 158.

## C.  Evidentiary Issues

Ryobi also raises two evidentiary claims on appeal.  We review the district court's evidentiary rulings for abuse of discretion.  Monteagudo v. Asociación de Empleados del Estado Libre Asociado de P.R., 554 F.3d 164, 173 (1st Cir. 2009).  Even if erroneous, we disregard any defect below "which does not affect the substantial rights of the parties."  Kelley v. Airborne Freight Corp., 140 F.3d 335, 346 (1st Cir. 1998) (quoting Fed. R. Civ. P. 61).

First, Ryobi argues that the district court erred by allowing Osorio's witness, Mr. Holt, to disparage the design of the BTS 15 in ways that Ryobi claims were irrelevant to the case at issue and prejudicial to its case.  Specifically, Mr. Holt suggested that the design of the BTS 15's guiding "rip fence" and safety blade guard were defective and commented on the saw's dimensions, motor, and warnings.  Ryobi contends that these comments were irrelevant because Osorio conceded that he did not use the blade guard at the time of the accident and, thus, no alternative guard design would have helped to avoid Osorio's accident.

Here, the district court did not abuse its discretion.  Viewed in the context of the parties' dispute, it is clear that Holt's comments went to a major and controverted issue at trial: whether Osorio was partly at fault for the accident that caused his

injury. Ryobi's counsel tried to convince the jury that Osorio was largely to blame, in part because he did not use the factory-issued blade guard and removed the guiding rip fence before using the BTS 15. Conversely, Osorio sought to prove that it was common for consumers to remove this equipment and that Ryobi should have accounted for this probability in its design. Holt's testimony bore on this controversy and was patently relevant to the proceedings. See Bielunas v. F/V Misty Dawn, Inc., 621 F.3d 72, 77 (1st Cir. 2010).

Second, Ryobi claims that the district court erred by not allowing the jury to watch an excerpt from a video deposition of Osorio which, Ryobi alleges, was inconsistent with Osorio's statements at trial describing the cut he made when he injured himself. Osorio responds that Ryobi did not adequately preserve this issue and has thus waived it on appeal. Even if Ryobi preserved the claim, Osorio argues that the district court did not abuse its discretion when it refused to allow Ryobi to use the proposed video deposition and avers any error was harmless.

We do not find any evidence in the record that Ryobi preserved this second evidentiary claim for our review. "Preserving the claim of error based on exclusion of evidence requires an adequate proffer, so that the trial and appellate courts know what evidence is at issue." Fusco v. Gen. Motors Corp., 11 F.3d 259, 263 n.3 (1st Cir. 1993); see United States v.

-21-

<u>Amaya-Manzanares</u>, 377 F.3d 39, 46 (1st Cir. 2004); <u>see also</u> <u>Montalvo</u> v. <u>González-Amparo</u>, 587 F.3d 43, 48 (1st Cir. 2009) ("[A]n appellant who has not proffered a particular claim or defense in the district court may not unveil it in the court of appeals." (quoting <u>Nat'l Ass'n of Soc. Workers</u> v. <u>Harwood</u>, 69 F.3d 622, 627 (1st Cir. 1995) (internal quotation marks omitted))).  At the district court, Ryobi's counsel tried to show video of Osorio's deposition, but the trial judge did not allow him to do so.  The record reflects that Ryobi's counsel then asked the judge if he could instead show the witness the deposition transcript, adding that he "would be happy to do that."  The judge agreed to this request, and the trial continued.  At no later point in time did Ryobi's counsel object to the district court's ruling.  Not having raised the issue below, we find Ryobi's assertion that the excerpts of Osorio's video deposition were central to its case difficult to credit and conclude that Ryobi's argument is waived.[6]

---

[6]  Even assuming we were to find that Ryobi preserved this issue for appellate review, we think it is very likely that appellant's claim would fail to overcome the "special degree of deference" that we give district judges' "on-the-spot judgment calls" regarding which evidence to admit or exclude at trial.  <u>Rodríquez</u> v. <u>Señor Frog's de la Isla, Inc.</u>, 642 F.3d 28, 35-36 (1st Cir. 2011).  Moreover, in the unlikely event that Ryobi cleared that hurdle, it is unclear how the excerpt of Osorio's video deposition that Ryobi sought to introduce would support Ryobi's case so fully as to require a new trial.  The jury was, of course, well aware that the parties disagreed about the type of cut Osorio made when he injured his hand and that neither the blade guard nor the guides for the wood were used.  Additionally, the jury found Osorio to be thirty-five percent at fault for the accident, but awarded damages on another theory.  Ultimately, we find it doubtful that the video

### III.  Conclusion

For the reasons stated above, we affirm the district court's order.

**Affirmed**.

---

excerpts of Osorio's deposition would be so vital to Ryobi's case as to overcome the strong presumption against granting a new trial. See McDonough v. City of Quincy, 452 F.3d 8, 19-20 (1st Cir. 2006) ("Erroneous evidentiary rulings are harmless if it is highly probable that the error did not affect the outcome of the case.").