# United States Court of Appeals for the Federal Circuit

---

**INLINE PLASTICS CORP.,**
*Plaintiff-Appellant*

**v.**

**LACERTA GROUP, LLC,**
*Defendant-Cross-Appellant*

---

2022-1954, 2022-2295

---

Appeals from the United States District Court for the District of Massachusetts in No. 4:18-cv-11631-TSH, Judge Timothy S. Hillman.

---

Decided: March 27, 2024

---

DAVID SILVIA, McCarter & English, LLP, Stamford, CT, argued for plaintiff-appellant. Also represented by JAMES M. BOLLINGER; ERIK PAUL BELT, ALEXANDER HORNAT, Boston, MA.

LAUREL M. ROGOWSKI, Hinckley, Allen & Snyder, LLP, Boston, MA, argued for defendant-cross-appellant. Also represented by DANIEL JOHNSON; CRAIG M. SCOTT, Providence, RI.

---

Before TARANTO, CHEN, and HUGHES, *Circuit Judges*.

TARANTO, *Circuit Judge.*

In this action, filed by Inline Plastics Corp. against Lacerta Group, LLC, Inline alleges infringement of several of its patents, *i.e.*, U.S. Patent Nos. 7,118,003; 7,073,680; 9,630,756; 8,795,580; and 9,527,640, which describe and claim certain containers (having features that make them resistant to tampering and make tampering evident) as well as methods of making such containers using thermoformed plastic. After the district court granted Inline summary judgment of infringement on a subset of claims, a jury determined that the remaining asserted claims were not infringed and that all the asserted claims (including those already held infringed) were invalid. The district court denied posttrial motions, found the case not exceptional for purposes of attorney fees under 35 U.S.C. § 285, and entered a final judgment.

Inline appeals on several grounds, including that it was entitled to judgment as a matter of law of no invalidity and that an error in the jury instructions requires a new trial on invalidity. Lacerta cross-appeals, challenging the denial of attorney fees and the judgment's dismissal "without prejudice" of certain patent claims Inline voluntarily dropped from its asserted-claims list near the end of trial.

We reject Inline's argument for judgment as a matter of law of no invalidity, but we agree with Inline that the jury instruction on the objective indicia of nonobviousness constituted prejudicial legal error, so the invalidity judgment must be set aside. We affirm the judgment's adoption of the verdict's finding of no infringement, a finding separate from invalidity. We remand for a new trial on invalidity as to all Inline-asserted claims; damages (not yet adjudicated) also will have to be adjudicated for the claims already held infringed on summary judgment if newly held not invalid. We address Inline's other arguments in a limited manner given our new-trial ruling. On Lacerta's cross-appeal, because there is no longer a final judgment, we

vacate the without-prejudice dismissal of Inline's late-withdrawn claims and the denial of attorney fees.

## I

## A

The '003, '680, and '756 patents claim containers with certain properties, and the '580 and '640 patents claim methods of making such containers using thermoformed plastic. *See* J.A. 81–181. The patents are related and have materially similar specifications. The properties of significance are "features which either deter unauthorized tampering or clearly indicate whether unauthorized tampering has occurred, or both." '003 patent, col. 1, lines 58–60. The so-called "tamper-resistant/evident" features "deter[] theft and prevent[] the loss of product and income for the seller, as well as instill[] consumer confidence in the integrity of the contents within the container and confidence in the ability of the seller and/or manufacturer to provide and maintain quality goods." *Id.*, col. 1, line 65, through col. 2, line 3. Figure 1 illustrates an embodiment:



The patents describe tamper-resistant features that make the containers physically difficult to open: The containers are "configured and dimensioned to render the outwardly extending flange of the cover portion relatively inaccessible when the cover is closed." *Id.*, col. 2, lines 25–27. In one preferred embodiment, the claimed containers include "an upwardly projecting bead" that "is positioned to surround the outer edge" of a flange on the cover portion when the container is closed and thereby "physically impede[] access" to the cover portion "from fingers or any other object that might normally be used for leverage" to pry the cover open. *Id.*, col. 5, line 65, through col. 6, line 13; *id.*, fig.10. The patents also describe tamper-evident features that indicate whether the container has previously been opened, for example, a "hinge" that "preferably includes a frangible section, which upon severing, provides a projection that extends out beyond the upwardly projecting bead of the upper peripheral edge of the base portion to facilitate removal of the cover portion from the base portion." *Id.*, col. 2, lines 28–39.

Claim 1 of the '003 patent is representative:

1. A tamper-resistant/evident container comprising:

> a) a plastic, transparent cover portion including an outwardly extending peripheral flange;

> b) a base portion including an upper peripheral edge forming at least in part an upwardly projecting bead extending substantially about the perimeter of the base portion and configured to render the outwardly extending flange of the cover portion relatively inaccessible when the container is closed; and

> c) a tamper evident bridge connecting the cover portion to the base portion.

*Id.*, col. 8, lines 55–65.

## B

In August 2018, Inline filed a complaint in the United States District Court for the District of Massachusetts alleging Lacerta's infringement of the '003, '680, and '756 patents. J.A. 182–92. Later, Inline added allegations of infringement of the '580 and '640 patents. J.A. 231–45.

The district court made several pretrial rulings of significance to the issues on appeal now. In December 2019, the district court issued an order construing the claim terms "upwardly projecting bead," "relatively inaccessible," "hinder access," and "configured to substantially surround." *Inline Plastics Corp. v. Lacerta Group, Inc.*, 415 F. Supp. 3d 243, 258 (D. Mass. 2019) (*Claim Construction Order*); *see also* J.A. 6–13, 15–17, 19. In January 2021, the district court ruled on the parties' cross-motions for summary judgment regarding the issue of infringement (apart from invalidity): The court granted Inline summary judgment of Lacerta's infringement of claims 1–3 and 6 of the '640 patent, but it otherwise denied both parties' motions. *Inline Plastics Corp. v. Lacerta Group, Inc.*, 560 F. Supp. 3d 424 (D. Mass. 2021) (*Summary Judgment Opinion*); *see also* J.A. 2980–97.

In January 2022, a few days before trial, the district court ruled on several motions in limine. It ruled that because the expert report of Dr. MacLean (Lacerta's expert) was silent on the objective indicia of nonobviousness, Dr. MacLean would not be allowed to testify as to the objective indicia at trial; and yet, because deposition testimony established that Dr. MacLean had "considered secondary considerations of non-obviousness in forming his opinion on the ultimate question of obviousness," Dr. MacLean would be allowed to state his conclusion about the

"ultimate question of obviousness," which he had done in his expert report. *Inline Plastics Corp. v. Lacerta Group, Inc.*, No. 18-cv-11631 (D. Mass. Jan 27, 2022), ECF No. 308 (order granting in part and denying in part Inline's motion in limine); *see also* J.A. 67.[1]  The district court similarly allowed Dr. MacLean to testify about the indefiniteness of certain asserted claims, a topic addressed in his expert report. *Inline Docket* (Jan. 27, 2022), ECF No. 306 (order denying Inline's motion in limine, ECF No. 203); J.A. 67; *see also* J.A. 8256–61 (Dr. MacLean's report).

The district court held a thirteen-day jury trial in February 2022. J.A. 67–72.  On the twelfth day of trial, Inline voluntarily withdrew twenty-one of its asserted claims,[2] leaving twenty-eight asserted claims.[3]  The jury returned a general verdict regarding Inline's remaining asserted claims, finding that (1) all of them were invalid and (2) Lacerta did not infringe all claims for which the question of infringement was put to the jury (all but claims 1–3 and 6 of the '640 patent, for which Inline had already been granted summary judgment of infringement). J.A. 21–26.

The district court then ruled on several relevant posttrial motions.  Inline moved for entry of partial final

---

[1]    We hereafter cite to certain items on the district court docket as *Inline Docket*, ECF No. ___.

[2]    Those withdrawn claims are claims 6–7, 9, 17–20, and 25 of the '003 patent; claims 4–5, 7, 9, 18–19, 21, and 23 of the '680 patent; claims 5 and 8 of the '756 patent; and claims 2–3 and 15 of the '580 patent. *Inline Docket* (May 25, 2022), ECF No. 389 (order certifying a partial final judgment); *see also* J.A. 27–28.

[3]    The remaining asserted claims are claims 1–3, 21–22, and 24 of the '003 patent; claims 1–3, 6, 8, 17, 20, 25, and 27 of the '680 patent; claims 1, 3, and 6–7 of the '756 patent; claims 1, 4, and 8–9 of the '580 patent; and claims 1–3 and 5–6 of the '640 patent. *Id.*

judgment under Federal Rule of Civil Procedure 54(b), a step reflecting the presence in the case of an unadjudicated affirmative defense of unenforceability for inequitable conduct. The district court granted Inline's motion, and the resulting judgment both embodied the jury's verdict on the claims presented to it and "dismissed without prejudice" the twenty-one patent claims Inline had withdrawn (the "without prejudice" statement included over Lacerta's opposition). *Inline Docket* (May 25, 2022), ECF Nos. 389, 390 (order certifying a Rule 54(b) partial final judgment and judgment); *see also* J.A. 27–30, 3402–07. Subsequently, the district court denied Inline's motions seeking judgment as a matter of law or a new trial on both validity and infringement. *Inline Docket* (Aug. 31, 2022), ECF No. 422 (order denying Inline's motions for judgment as a matter of law or for a new trial); J.A. 80. The district court also denied Lacerta's motion for attorney fees, finding the case not exceptional, under 35 U.S.C. § 285. *Inline Docket* (Aug. 31, 2022), ECF No. 421 (order denying Lacerta's motion for attorney fees); J.A. 31–32, 80.

The district court had jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a). The district court entered partial final judgment under Rule 54(b) on May 25, 2022. Inline filed a timely notice of appeal on June 23, 2022. J.A. 78. The district court denied Inline's relevant posttrial motions and Lacerta's § 285 motion on August 31, 2022. We reactivated Inline's appeal on September 9, 2022, ECF No. 7, and Lacerta filed a timely notice of cross-appeal on September 27, 2022, J.A. 10877–78. We have jurisdiction to decide this appeal under 28 U.S.C. § 1295(a)(1).

## II

We begin with the judgment of invalidity of the asserted claims. Inline argues that it is entitled to judgment as a matter of law rejecting Lacerta's obviousness challenge to the asserted claims. It also argues that, if we do not award it the requested judgment of nonobviousness, we

should set aside the verdict of invalidity and order a new trial of the issue.  We reject the first argument but agree with the second.

A

"[W]e apply the law of the regional circuit in which the district court sits, here, the First Circuit, in reviewing . . . the denial of a motion for [judgment as a matter of law]." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1295 (Fed. Cir. 2014).  The First Circuit reviews the denial of such a motion without deference to the district court's decision, "consider[ing] the evidence presented to the jury and all reasonable inferences that may be drawn therefrom in the light most favorable to the jury verdict" and reversing only "'if the facts and inferences point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have reached a verdict against that party.'" *Id.* at 1297 (quoting *Osorio v. One World Technologies, Inc.*, 659 F.3d 81, 84 (1st Cir. 2011)); *see also* Fed. R. Civ. P. 50.  Applying that standard, we conclude that the jury could reasonably have found obviousness.  We reject Inline's three arguments to the contrary.

First, Inline argues that "Lacerta's prior art references and expert testimony on obviousness were deficient."  Inline Opening Br. at 45 (capitalization omitted); *see id.* at 23–24, 45–46.  Inline asserts that, of the six prior-art references, four were before the Patent and Trademark Office (PTO) during examination and the other two were "cumulative" of PTO-considered references or "taught away" and "[i]t was simply not feasible to combine" the relied-on references.  *Id.* at 45–46.  But Inline cites no authority that precludes a successful obviousness challenge that rests on PTO-considered references; Inline provides no elaboration of the "taught away" assertion separate from its conclusory feasibility assertion; and its brief descriptions of the prior art do not persuade us that it was unreasonable for the jury to credit the testimony about the feasibility of the argued

combination given by Lacerta's expert, Dr. MacLean, *see* J.A. 1790–91, 1827, 1830.

Second, Inline argues that Lacerta did not present legally sufficient evidence of the motivation to combine references. Inline Opening Br. at 46–49. But Dr. MacLean testified that there was a motivation to make the argued combination. *See*, *e.g.*, J.A. 1824 (explaining the meaning and relevance of "motivation to combine"); J.A. 1789, 1791 (motivation to combine to add "tamper resistance" features to a primary reference); J.A. 1790 (motivation to combine add a hinge feature to make product easier to "manipulate or handle"); J.A. 1795–96 (motivation to combine to create a single-piece plastic container); J.A. 1796 (motivation to combine to add "locking features" proximate to other support structures); J.A. 1827 (motivation to combine features from two-piece and one-piece plastic containers). The asserted prior-art references and product-design-related testimony from other witnesses provides additional support for finding a motivation to make the argued combination. *See*, *e.g.*, J.A. 485–86 (explaining problems with prior-art tamper-resistant/tamper-evident plastic containers and Inline's motivation to design containers that would function "in a simpler, more effective way"); J.A. 492, 882–83, 1079 (explaining the cost and efficiency advantages of a one-piece plastic container).

"[T]his court has consistently stated that a court or examiner may find a motivation to combine prior art references in the nature of the problem to be solved" and that "[t]his form of motivation to combine evidence is particularly relevant with simpler mechanical technologies." *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004). Moreover, "we have recognized that some cases involve technologies and prior art that are simple enough that no expert testimony is needed" regarding a motivation to combine. *Intercontinental Great Brands LLC v. Kellogg North America Co.*, 869 F.3d 1336, 1348 (Fed. Cir. 2017). The evidence suffices to support the jury verdict in this case.

Third, Inline argues that Lacerta's challenge must fail because Dr. MacLean did not rebut or opine on Inline's objective-indicia evidence. Inline Opening Br. at 49–50. But we have never held that the challenger must present its own testimony on objective indicia or else the patentee's evidence must be credited, much less must be credited as dispositive of the obviousness issue. *See InTouch Technologies, Inc. v. VGO Communications, Inc.*, 751 F.3d 1327, 1352 n.8 (Fed. Cir. 2014) ("We do not imply that a defendant must proffer an expert on objective indicia of nonobviousness before the trier of fact may reject such evidence."). After all, a jury may reasonably decide not to credit the patentee's evidence on objective indicia, or to assign it little weight, because of the weakness of that evidence on its own.

In this case, Inline on appeal makes no substantial argument on the facts of this case that a reasonable jury could not have decided to give Inline's objective-indicia evidence little weight, considered on its own or in relation to Lacerta's prima facie obviousness evidence. Inline is left, therefore, with its categorical argument based on the simple absence of expert testimony on the point from Lacerta's expert. That categorical argument is incorrect.

B

Inline makes several arguments for a new trial on validity. One argument is that the district court gave an incorrect jury instruction regarding the objective indicia of nonobviousness—mentioning only the objective indicia of commercial success and long-felt need, not other objective indicia for which there was evidence—and that this error was prejudicial, requiring a new trial on invalidity. We agree. As a result, we need not and do not reach Inline's additional new-trial arguments. We vacate the district court's judgment and remand to the district court with instructions for further proceedings.

1

"[J]ury instructions must be both legally correct and sufficiently comprehensive to address factual issues for which there is disputed evidence of record." *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 853–54 (Fed. Cir. 1991). "The legal sufficiency of jury instructions on an issue of patent law is a question of Federal Circuit law which this court reviews de novo, ordering a new trial on that basis only when errors in the instructions as a whole clearly misled the jury." *Bettcher Industries, Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 638 (Fed. Cir. 2011). "'[A] party seeking to alter a judgment based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error.'" *Id.* at 639 (quoting *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1311–12 (Fed. Cir. 2005)).

We conclude that the district court's objective-indicia instruction was legal error. During the trial, Inline presented evidence of industry praise for its products, J.A. 502–507, 5670, 5680–83, evidence that it highlighted in its closing arguments, *see* Transcript of Jury Trial—Day 13 at 10, 27–28, *Inline Docket* (Mar. 29, 2022), ECF No. 375. Inline also presented evidence earlier in the trial that, it reasonably asserts, has weight as evidence for additional objective indicia, such as copying and licensing. *See, e.g.*, J.A. 811–13, 852–54, 859–60, 865–67 (copying); J.A. 510, 1238–40 (licensing). That evidence, taken together, called for an instruction, if properly requested, on the objective indicia to which the evidence pertains, so that the jury could assess its weight as objective indicia and—where the jury was asked for the bottom-line answer on obviousness—in relation to the prima facie case. The district court did not give such an instruction.

Inline properly preserved its present argument about the inadequacy of the instructions given. Before trial, Inline (and Lacerta) specifically requested objective-indicia instructions that included mention of industry praise, copying, and licensing, which also were part of the court's draft instructions. *See* J.A. 3153–54 (Inline's proposed instructions); J.A. 10853 (Lacerta's proposed instruction); J.A. 11113 (district court's draft jury instructions addressing additional objective indicia including industry praise, copying, and licensing). When the portions now at issue were not read to the jury, Inline timely objected "to the Court's elimination of several of the secondary considerations of nonobviousness from the instructions" after the instructions were read and before deliberations. J.A. 2201; *see also* J.A. 2185 (the district court's objective-indicia jury instruction).

The error in the objective-indicia instruction here was not harmless (whether under Federal Circuit or First Circuit law). We cannot say that a proper instruction would have made no difference to a reasonable jury regarding invalidity. *See, e.g.*, *Avid Technology, Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1047 (Fed. Cir. 2016) (collecting cases) ("Because there was no separate jury determination of non-infringement on a distinct ground, the error in the instruction governing this central dispute at trial would be harmless only if a reasonable jury would have been required by the evidence to [make the finding it made] even without the error."); *Costa-Urena v. Segarra*, 590 F.3d 18, 26 (1st Cir. 2009) (determining that an instructional error was not harmless when "the evidence was sufficiently mixed that it would allow (though not compel) a reasonable, properly instructed jury to find" other than it did).

For one thing, although the jury was presented with invalidity grounds in addition to obviousness, the jury, acting reasonably, could well have determined that at least some claims were invalid for obviousness only. Indeed, it is hard to see any other real possibility, because the jury

held all asserted claims invalid, but the other grounds undisputedly applied (together) to only some, not all, of the asserted claims.[4]

Moreover, the prima-facie-case part of the obviousness evidence in this case is not so strong that we are prepared to say that a reasonable jury, properly instructed to consider all the objective indicia for which Inline presented material evidence, including industry praise, copying, and licensing, had to find all asserted claims invalid for obviousness. Nor are we are prepared to draw that conclusion just because the jury was instructed to consider Inline's commercial-success and long-felt-need evidence and still found obviousness for at least some asserted claims. The criteria for giving weight, in the obviousness inquiry, differ among the objective indicia, even when some of the same facts bear on different indicia. For example, industry praise, copying, and licensing can convey, explicitly or implicitly, information about how competitors and fellow industry members evaluated the merits of a new product, potentially even before the introduction of that product to the market, while commercial-success and long-felt-need evidence (particularly as presented by Inline in this case, J.A. 2024–32) may depend more on commercial reactions to a new product chiefly over a longer period after its

---

[4]    Of the claims the jury determined invalid, the district court instructed the jury that the indefiniteness and written-description invalidity grounds applied only to claims 22 and 24 of the '003 patent; claim 1 of the '756 patent; claim 1 of the '580 patent; and claim 1 of the '640 patent, as well as any dependent claims. *See* J.A. 2182 (written description); J.A. 2183 (indefiniteness). Yet the jury found invalid not only the just-mentioned claims but also claims 1–3 and 21 of the '003 patent and claims 1–3, 6, 8, 17, 20, 25, and 27 of the '680 patent.

introduction to the market.  A reasonable jury could determine that evidence evaluated within the former categories of objective indicia moves the needle materially toward nonobviousness, even while determining that evidence evaluated within the latter categories does not.

Because the district court's objective-indicia jury instruction was prejudicial legal error, we vacate the district court's judgment and remand for a new trial on the issue of invalidity.

2

Having made that determination, we need not and do not decide the merits of Inline's alternative arguments that a new trial on invalidity is required because the district court instructed the jury on written-description and indefiniteness invalidity grounds.  Those arguments rest on the generally recognized principles under which trial courts "will refuse a request for an instruction that correctly states a legal abstraction that is not applicable to the facts of the case or that would submit to the jury a matter that the court should determine for itself."  9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2552 (3d ed. Apr. 2023 update) (footnotes omitted).  On remand, the district court will hold a new invalidity trial.  At that time, and in the proceedings leading to it, the district court should assess the appropriateness of giving such instructions in the new trial, considering what issues have been properly preserved, what instructions are warranted given the evidence presented to the jury, and how particular issues are properly allocated between judge and jury.[5]

---

[5]    Though the district court granted Inline summary judgment of Lacerta's infringement of claims 1–3 and 6 of the '640 patent, *Summary Judgment Opinion*, at 438, that determination clearly did not adjudicate invalidity issues (which went to trial for even those claims), and it cannot

3

We also need not and do not decide the merits of another argument for a new trial on invalidity made by Inline. This argument challenges the district court's decision to permit Dr. MacLean to testify on the ultimate issue of obviousness at trial, despite—in a ruling not challenged on appeal by Lacerta—barring him from testifying about objective indicia of nonobviousness (a topic on which his expert report was silent). Although we draw no definitive conclusion about whether that combination of rulings would require a new trial, we note the seriousness of Inline's challenge and conclude that, on remand, the district court should consider its ruling anew.

In *InTouch*, we recited the familiar standards for obviousness from *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966): "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness." *InTouch*, 751 F.3d at 1347 (citing *Graham*). We added that when "an expert purports to testify, not just to certain factual components underlying the obviousness inquiry, but to the ultimate question of obviousness, the expert must consider all factors relevant to that ultimate question." *Id.* at 1352 n.8; *see also High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013) ("[A]n expert's opinion [on the ultimate issue of obviousness] may be relevant to the factual aspects of the analysis leading to that legal conclusion."). We did not say that the requirement of "consider[ation]" of all

---

fairly be read, contrary to Inline's present arguments, Inline Opening Br. at 40, as precluding a later-raised indefiniteness challenge to those claims in particular (if such a challenge was properly preserved and presented).

factors may be met without documentation of the consideration in an adequate expert report.

Here, in allowing Dr. MacLean to testify on the ultimate issue of obviousness at trial, the district court concluded, based on Dr. MacLean's deposition, that there was sufficient record evidence that Dr. MacLean had "considered" the relevant obviousness factors, including objective indicia, even though the court had barred him from testifying about the objective indicia of nonobviousness because he did not provide the required pretrial notice in the form of an adequate expert report on the issue. *Inline Docket* (Jan 27, 2022), ECF No. 308; J.A. 11024 (MacLean deposition); J.A. 8185–275 (MacLean invalidity expert report). The net result was to allow him to state a conclusion without a timely, proper disclosure of the factual bases for a component of that conclusion. On remand, the district court should consider anew whether Dr. MacLean should be limited to testifying only about the first three *Graham* factors—the factors adequately discussed in his report—rather than the ultimate question of obviousness, given that the bottom-line conclusion depends in part on an objective-indicia analysis that was missing from his expert report.

## III

We turn to the issue of infringement (viewed here as separate from invalidity). Inline argues that it is entitled to a new trial on infringement, first, because the district court erred in its claim constructions and, second, because the district court improperly admitted evidence of a Lacerta-owned patent as relevant to the issues of willfulness and damages. We find these arguments unpersuasive and affirm the district court's denial of Inline's motion for a new trial on the issue of infringement.

A

Inline argues that the district court erroneously construed four claim terms: (1) "upwardly projecting bead," construed to mean "[r]aised portion of the upper peripheral edge that substantially surrounds the outer edge of the outwardly extending peripheral flange"; (2) "relatively inaccessible," construed to mean "[p]hysically impedes access from fingers or any other object to separate the cover portion from the base portion"; (3) "hinder access," construed to mean "[p]hysically impedes access from fingers or any other object to separate the cover portion from the base portion"; and (4) "configured to substantially surround" (a term present in two construed limitations), construed to mean "[c]onfigured to physically impede access to . . . when the container is closed." *Claim Construction Order*, at 250–58; J.A. 6–13, 15–17, 19.

Inline's principal argument on appeal is that the district court's constructions of those four terms, taken together, "permitted the jury to conclude '100% inaccessible' was actually required,'" Inline Opening Br. at 51, though that requirement, says Inline, is not specified by the claim language as understood by a relevant artisan after reading the specification. We decide the proper claim construction and address the intrinsic-evidence aspects of a claim-construction analysis de novo, while we review for clear error any subsidiary factual determinations based on extrinsic evidence made by the district court. *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–33 (2015).

We see no error in the district court's constructions of the claim limitations at issue. They fit the claim terms' ordinary meanings, and they align with the specification. One key purpose of the invention (reflected in the relevant claim limitations) is to "deter unauthorized tampering," including "theft," and "the loss of product and income for the seller" through structural features that make the claimed containers physically difficult to open. '003 patent, col. 1,

line 56, through col. 2, line 3.  Claim 1 of the '003 patent, for example, states that the "upwardly projecting bead" both "extend[s] substantially about the perimeter of the base portion" and is "configured to render the outwardly extending flange of the cover portion relatively inaccessible when the container is closed." *Id.*, col. 8, lines 55–65.  The specification, similarly, describes how the upwardly projecting bead surrounds and renders the flange inaccessible, *id.*, col. 2, lines 15–27, particularly (in a preferred embodiment) to fingers or other objects, *id.*, col. 5, line 65, through col. 6, line 13; *id.*, fig.10.

The district court's constructions clarify the scope of the claimed structures in light of that stated purpose, while being careful not to impose unclaimed structural or functional requirements or the extreme view Inline suggests. *See Claim Construction Order*, at 249 n.5 ("The court rejects the suggestion that physically blocking access to something makes it 100% inaccessible."); *id.* at 251–52, 252 n.7; *id.* at 256 ("Lacerta offers no support . . . for including height and proximity limitations to any construction of this term.").  Further, the district court emphasized in its jury instructions that its constructions "do[] not mean that access [to the cover portion and flange] is impossible."  J.A. 2176, lines 16–17, 21–22.  We therefore reject Inline's argument on appeal that the district court's constructions "permitted the jury to conclude '100% inaccessible' was actually required."  Inline Opening Br. at 51.

B

Inline argues for a new trial on infringement on a distinct ground: It contends, as we understand its argument, that the district court allowed Lacerta to introduce evidence of a Lacerta patent for its relevance to the issues of willfulness and damages and that such evidence had an adverse effect on the jury's infringement finding.  Inline Opening Br. at 62–63.  "[W]e apply the law of the regional circuit in which the district court sits, here, the First

Circuit, in reviewing . . . challenges to a district court's evidentiary rulings." *AbbVie*, 759 F.3d at 1295. In the First Circuit, "[c]hallenges to a district court's evidentiary rulings are . . . reviewed under an abuse of discretion standard," with the reviewing court considering "'whether the error was harmless'" and "'whether exclusion or admission of the evidence affected plaintiff's substantial rights.'" *Id.* at 1302 (quoting *Lynch v. City of Boston*, 180 F.3d 1, 15 (1st Cir. 1999)).

Inline has not pointed to legal authority establishing that Lacerta's patent was inadmissible as irrelevant, as a matter of law, to the issues of willfulness or damages. And as Inline itself observes, the district court gave a limiting instruction to the jury, on two occasions, clarifying that the jury should consider Lacerta's patent only on the issues of willfulness and damages but not on the issue of infringement. J.A. 1474–76, 2174; *see* Inline Opening Br. at 63. We do not see reversible error in these circumstances. We do not foreclose the district court from reconsidering the issue in the context of retrying damages (for the claims held infringed on summary judgment).

IV

On its cross-appeal, Lacerta argues that the district court erred by dismissing Inline's late-withdrawn patent claims without prejudice (instead of with prejudice) and by denying its motion for attorney fees under 35 U.S.C. § 285. We review both of those rulings for an abuse of discretion. *See Doe v. Urohealth Systems, Inc.*, 216 F.3d 157, 160 (1st Cir. 2000) (Rule 41); *Klunder v. Brown University*, 778 F.3d 24, 34 (1st Cir. 2015) (Rule 15); *Highmark Inc. v. Allcare Health Management System, Inc.*, 572 U.S. 559, 561 (2014) ("[A]n appellate court should review all aspects of a district court's § 285 determination for abuse of discretion."). In light of our rulings above, we vacate both the without-prejudice dismissal of Inline's late-withdrawn claims and the district court's denial of fees under § 285.

A

We vacate the district court's without-prejudice dismissal of Inline's late-withdrawn claims. We first note that Lacerta has made facially substantial arguments that Inline's late withdrawal of a number of its asserted claims warranted dismissal with prejudice. Although, as the district court noted, Lacerta did not object to the withdrawal of the claims at the trial, *Inline Docket* (May 25, 2022), ECF No. 389; J.A. 1806, it never consented to withdrawal "without prejudice," and it objected to that qualifier in its opposition to Inline's proposed Rule 54(b) judgment, J.A. 3402–07.

We think that further consideration of whether the dismissal must be with prejudice in the circumstances here is warranted and that it is best for that consideration to occur on remand after we vacate the judgment in this respect. We do not suggest (and Inline has not argued) that the withdrawn claims should, or even can, be reinserted into the case. But we see no need for a definitive ruling on the "without prejudice" issue now, and we seek to avoid any risk that a final judgment on these claims now would adversely affect the further adjudication of the many claims that have to be retried in part. Such an unintended effect, a matter not briefed before us, can be avoided by vacating this dismissal and returning the issue to the district court on remand.

B

We vacate the district court's denial of Lacerta's motion for an exceptional-case determination and attorney fees under 35 U.S.C. § 285. We review the district court's determination that this case was not "exceptional" under § 285 deferentially. *See University of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1323 (Fed. Cir. 2017). Although we see no reversible error in that determination, we vacate it because a threshold requirement for fees under § 285 is no longer

met now that we are vacating aspects of the district court's judgment and ordering a new trial on invalidity (and damages, as noted). Lacerta is no longer the (almost fully) prevailing party it was when the Rule 54(b) judgment was entered. We will vacate the exceptional-case determination, permitting a redetermination of that matter to be made once the remand litigation reaches an appropriately final stage. *See DH Technology, Inc. v. Synergystex International, Inc.*, 154 F.3d 1333, 1344 (Fed. Cir. 1998) ("Because the case has not yet been resolved and the prevailing party has not yet been determined, we necessarily vacate the district court's decision regarding exceptional case status.").

## V

We have considered Inline and Lacerta's additional arguments and find them unpersuasive. We affirm the district court's denial of Inline's motion for judgment as a matter of law of validity, vacate the district court's judgment of invalidity and remand for a new trial on invalidity (and damages, as noted), affirm the district court's judgment to the extent it found noninfringement of various claims by Lacerta, vacate the without-prejudice dismissal of Inline's late-withdrawn claims, and vacate the district court's denial of Lacerta's motion for attorney fees under § 285.

The parties shall bear their own costs.

### AFFIRMED IN PART, VACATED IN PART, AND REMANDED